UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
ANDREW WANG and SHOU-KUNG        :
WANG, individually and           :
derivatively on behalf of the    :
Chi-Chuan Wang Revocable         :
Trust,                           :
                                 :
             Plaintiffs,         :
                                 :   No. 18 Civ. 8948 (JFK)
    -against-                     :   **OPINION & ORDER**
                                 :
YIEN-KOO KING, KENNETH KING,     :
RAYMOND KING, LYNN KING,         :
JOSEPH SHIH-FAN KING, and DOES   :
1-10,                            :
                                 :
             Defendants.         :
------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/27/2020

APPEARANCES

FOR PLAINTIFFS ANDREW WANG & SHOU-KUNG WANG
     Mark P. Ressler
     Kim Conroy
     Thomas B. Kelly
     Sondra D. Grigsby
     KASOWITZ BENSON TORRES LLP

FOR DEFENDANTS YIEN-KOO KING, KENNETH KING, & RAYMOND KING
     Sam P. Israel
     Timothy Savitsky
     SAM P. ISRAEL, P.C.

**JOHN F. KEENAN, United States District Judge:**

     Plaintiffs Andrew Wang ("A. Wang") and Shou-Kung Wang

("S.K. Wang") bring a motion for leave to file a second amended

complaint ("the SAC") following the Court's April 22, 2019

Opinion & Order ("the MTD Order") that dismissed without

prejudice Plaintiffs' first amended complaint ("the FAC")

against Defendants Yien-Koo King ("Y.K. King"), Kenneth King ("K. King"), and others. For the reasons set forth below, Plaintiffs' motion is DENIED, their federal law claims are dismissed with prejudice, and this case is closed.

## I. Background

### A. Factual Background

The Court presumes familiarity with the allegations of this case as set forth in the MTD Order. See Wang v. King, No. 18-cv-8948 (JFK), 2019 WL 1763230 (S.D.N.Y. Apr. 22, 2019). To briefly summarize, Plaintiffs allege that Defendants engaged in a decades-long scheme to misappropriate artwork and assets belonging to S.K. Wang and the estate of the artist and collector Chi-Chuan Wang ("C.C. Wang"). Plaintiffs are: S.K. Wang (the son of C.C. Wang) and A. Wang (the son of S.K. Wang and grandson of C.C. Wang), individually and derivatively on behalf of the C.C. Wang Revocable Trust. Defendants are: Y.K. King (the daughter of C.C. Wang and sister of S.K. Wang), K. King (Y.K. King's husband), certain of Y.K. King and K. King's children, and other, unnamed defendants.

Plaintiffs allege that between 1979 and 1997, S.K. Wang assisted C.C. Wang in managing his business and assets, which included a world-class collection of ancient Chinese art ("the Classical Collection"). The Classical Collection included artworks that C.C. Wang owned, as well as artworks belonging to

2

S.K. Wang and a non-party to this action, Hui Chen. In 1997, Y.K. King objected to S.K. Wang acting as C.C. Wang's primary assistant. As a result, C.C. Wang relieved S.K. Wang from the role and installed Y.K. King. Plaintiffs allege that Y.K. King and her family used this newfound access to C.C. Wang's assets and the Classical Collection to defraud and loot C.C. Wang's estate ("the Estate"). Specifically, Plaintiffs allege that Defendants perpetrated the following offenses, which the Court outlined in detail in the MTD Order:

(1) orchestrated a series of fraudulent transactions, using interstate wires and telephones to siphon off monetary assets belonging to C.C. Wang;

(2) used the assets they had fraudulently obtained to purchase art from C.C. Wang at artificially low prices;

(3) removed artwork from a safe deposit box in C.C. Wang's apartment building and later prohibited him from accessing the artwork;

(4) stole certain bearer-share certificates that belonged to C.C. Wang;

(5) forged a settlement document that was introduced into evidence and made false statements to a medical expert who testified during a trial in New York County Surrogate's Court relating to the parties dispute over the validity of testamentary documents that C.C. Wang had executed in 2000 (the

3

"2000 Will")—which provided Y.K. King with an outsize portion of the Estate relative to her siblings—and 2003 ("the 2003 Will")—which reinstated the prior testamentary scheme and disinherited Y.K. King;

(6) sold numerous artworks, including six paintings collectively worth over $30 million, in violation of a restraining order the Surrogate's Court had issued ("the Restraining Order");

(7) stole paintings that were personally owned by S.K. Wang;

(8) committed fraud during bankruptcy proceedings by failing to make full disclosure of the extent of Y.K. King and K. King's art holdings, their possession of illicit proceeds, and their interests in certain corporate entities; and

(9) committed fraud in a related and ongoing civil action, King v. Wang, 14-cv-7694 (JFK) (S.D.N.Y.) ("the King Action"), by filing an amended complaint in 2016 that contains knowingly false allegations.

### B. Procedural History

Plaintiffs initiated this action on September 30, 2018. (ECF No. 4.) On October 15, 2018, the case was consolidated with the King Action, which had been initiated by the defendants in this action against the plaintiffs in this action for violations of the Racketeer Influenced and Corrupt Organizations

(RICO) Act and New York state law claims of conversion, common law fraud, and breach of fiduciary duty, among others. (ECF No. 9.) On February 12, 2019, Defendants moved to dismiss Plaintiffs' complaint ("the Original Complaint"), arguing that Plaintiffs' claims were barred by, <u>inter alia</u>, expiration of the statute of limitations, failure to plead proximate causation, equitable estoppel, and the <u>Rooker-Feldman</u> doctrine. (ECF No. 32.)

On February 13, 2019, Plaintiffs filed the FAC in lieu of opposing Defendants' motion to dismiss. (ECF No. 38.) As with the Original Complaint, the FAC alleged federal law claims for violation of RICO and conspiracy to violate RICO, and New York state law claims for breach of fiduciary duty and conversion. The FAC asserted that the Court had federal-question jurisdiction over the RICO claims, and it requested the Court exercise supplemental jurisdiction over the state law claims. On March 29, 2019, Defendants again moved to dismiss, again arguing that Plaintiffs' nearly identical claims failed for the same reasons that the Original Complaint failed. (ECF No. 50.)

Simultaneous to the filing of the Original Complaint and the motion practice related to it and the FAC, the parties were engaged in ongoing discovery in this case and the King Action. On March 13, 2019, the Court denied Defendants' request to stay discovery pending the resolution of their motion to dismiss.

(ECF No. 46.)  On April 10, 2019, Magistrate Judge Cott—who was supervising discovery in the King Action—ordered that all document discovery must be completed by May 10, 2019.  (ECF No. 65.)  Magistrate Judge Cott also allowed an extension of the deadline for fact discovery from May 8, 2019 to June 28, 2019, but he ordered that "[t]here will be no further extensions of these deadlines."  (Id.)

On April 22, 2019, the Court granted Defendants' motion and dismissed the FAC in its entirety and without prejudice.  (ECF No. 68.)  The Court dismissed Plaintiffs' RICO claims as time-barred and not the proximate cause of Plaintiffs' alleged injuries.  See Wang, 2019 WL 1763230, at *6, *7.  Having dismissed Plaintiffs' federal law claims, the Court declined to exercise supplemental jurisdiction over, and subsequently dismissed, Plaintiffs' remaining state law claims.  See id. at *8.  The Court allowed Plaintiffs to seek leave to amend their complaint, but ordered them to demonstrate how they will cure the deficiencies in their claims and that justice requires granting leave to amend.  See id.

On June 4, 2019, Plaintiffs moved the Court for leave to file the SAC.[1]  (ECF No. 70.)  The SAC reasserts the same RICO

_____

[1] In accordance with the Court's Individual Rules of Practice, the parties filed their motion papers after the motion was fully briefed. Accordingly, Plaintiffs' motion and the accompanying memorandum of law are dated May 13, 2019, which was the deadline the Court imposed for

claims pursuant to 18 U.S.C. § 1962(c) (substantive RICO
violation) and § 1962(d) (conspiracy to violate RICO), while
adding new allegations to establish that (1) the alleged sales
of Estate-owned artwork in violation of the Restraining Order
caused a new and independent RICO injury that is within the
applicable statute of limitations period and separate from
Defendants' initial theft of the artwork; and (2) Defendants'
use of the fraudulent expert witness testimony and settlement
document during the April 2017 Surrogate's Court trial
proximately caused the jury to invalidate the 2003 Will, which
led to A. Wang's removal as executor of the Estate. (Proposed
Second Amended Complaint ("SAC"), Ex. 1 to Decl. of Thomas B.
Kelly, ECF No. 72-1, ¶¶ 49–58, 68–73, 93.) Defendants opposed
the motion, arguing that leave to amend would be futile because
Plaintiffs' claims remain time-barred and their alleged injuries
still are not the proximate cause of the alleged predicate acts.
(ECF No. 73.) Defendants also re-raised their prior arguments
that Plaintiffs' claims are also barred by the Kings' discharge
in bankruptcy court, the Full Faith and Credit Clause,
collateral estoppel, and the Rooker-Feldman doctrine. (Id.)

Plaintiffs to seek leave to amend. See Wang v. King, No. 18-cv-8948
(JFK), 2019 WL 1763230, at *8 (S.D.N.Y. Apr. 22, 2019).

7

## II.  Discussion

### A.  Legal Standard

Leave to amend should be freely granted when justice so
requires. Fed. R. Civ. P. 15(a)(2); <u>Williams v. Citigroup Inc.</u>,
659 F.3d 208, 212 (2d Cir. 2011) (per curiam).  "This permissive
standard is consistent with [the Second Circuit's] 'strong
preference for resolving disputes on the merits.'" <u>Williams</u>, 659
F.3d 212-13.  "Nonetheless, the Court may deny leave if the
amendment (1) has been delayed unduly, (2) is sought for
dilatory purposes or is made in bad faith, (3) the opposing
party would be prejudiced, or (4) would be futile." <u>Lee v. Regal
Cruises, Ltd.</u>, 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (citing
<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)), <u>aff'd</u>, 116 F.3d 465
(2d Cir. 1997).  "An amendment to a pleading is futile if the
proposed claim could not withstand a motion to dismiss pursuant
to Fed. R. Civ. P. 12(b)(6)." <u>Lucente v. Int'l Bus. Machs.
Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (citing <u>Dougherty v. N.
Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 88 (2d Cir.
2002)).  "Thus, the standard for denying leave to amend based on
futility is the same as the standard for granting a motion to
dismiss." <u>IBEW Local Union No. 58 Pension Tr. Fund & Annuity
Fund v. Royal Bank of Scot. Grp., PLC</u>, 783 F.3d 383, 389 (2d
Cir. 2015).

In evaluating Plaintiffs' motion to amend, the Court will

consider whether the SAC cures the deficiencies identified in the MTD Order. See Tang v. Guo, No. 17-cv-9031 (JFK), 2019 WL 6169940, at *2 (S.D.N.Y. Nov. 20, 2019). In so doing, "the Court treats all factual allegations in the SAC as true and draws all reasonable inferences in Plaintiffs' favor." Kuriakose v. Fed. Home Loan Mortg. Corp., 897 F. Supp. 2d 168, 175 (S.D.N.Y. 2012) (citing Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000)), aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp., 543 F. App'x 72 (2d Cir. 2013). Should the SAC not contain sufficient factual matter to state a claim that is plausible on its face, the Court will deny leave to amend as futile. See Balintulo v. Ford Motor Co., 796 F.3d 160, 164-65 (2d Cir. 2015).

**B. RICO**

As with the MTD Order, the Court will first address Plaintiffs' RICO claims before deciding whether to exercise supplemental jurisdiction over their state law claims.

**1. Applicable Law**

RICO confers a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the RICO statute. 18 U.S.C. § 1964(c); see also Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639, 647 (2008). The RICO statute, in relevant part, makes it unlawful, "for any person employed by or associated with any enterprise engaged in,

9

or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in
the conduct of such enterprise's affairs through a pattern of
racketeering activity." 18 U.S.C. § 1962(c). Thus, to state a
claim for a substantive RICO violation, a plaintiff must allege
"(1) conduct (2) of an enterprise (3) through a pattern (4) of
racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d
Cir. 2001) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479,
496 (1985)). To establish standing under § 1962(c), a plaintiff
must show that "she suffered an injury to her 'business or
property,' [and] . . . her injury was caused 'by reason of' the
RICO violation—a standard that [the Second Circuit has] equated
to the familiar 'proximate cause' standard." D'Addario v.
D'Addario, 901 F.3d 80, 96 (2d Cir. 2018) (quoting 18 U.S.C. §
1964(c)).

The RICO statute defines "racketeering activity" to
"encompass dozens of state and federal offenses, known in RICO
parlance as predicates." RJR Nabisco, Inc. v. European Cmty.,
136 S. Ct. 2090, 2096 (2016). "These predicates include any act
'indictable' under specified federal statutes, §§ 1961(1)(B)–
(C), (E)–(G), as well as certain crimes 'chargeable' under state
law, § 1961(1)(A), and any offense involving bankruptcy or
securities fraud or drug-related activity that is 'punishable'
under federal law, § 1961(1)(D)." Id. "Given the routine use of

10

mail and wire communications in business operations, . . . 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014) (quoting Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 20 (1st Cir. 2000)).

## 2. Analysis

The FAC alleged three RICO-related injuries: (1) loss of art and assets by the Estate and S.K. Wang; (2) removal of A. Wang as the Estate's Preliminary Executor due to the jury's decision in Surrogate's Court to reject the 2003 Will; and (3) litigation expenses that Plaintiffs have incurred in the King Action to defend against Plaintiffs' allegedly meritless claims. The SAC reasserts the same three injuries, (SAC ¶¶ 93–94), as well as new facts that, Plaintiffs argue, establish a new injury, separate from Defendants' initial theft of the Estate's and S.K. Wang's property: namely, the priceless nature of the artwork, which destroyed the Restraining Order's core right to allow Plaintiffs a future opportunity to physically repossess the property. The Court will address each injury in turn below.

### a. Loss of the Right to Repossess Artwork

"RICO claims are governed by a four-year statute of limitations which 'begins to run when the plaintiff discovers or should have discovered the RICO injury.'" King v. Wang, No. 14-cv-7694 (JFK), 2017 WL 2656451, at *7 (S.D.N.Y. June 20, 2017) (quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998)).  In other words, "[t]he limitations period begins to run when the plaintiff has 'actual or inquiry notice of the injury.'" Id. (quoting Merrill Lynch, 154 F.3d at 60). Accordingly, "[t]he first step in the statute of limitations analysis is to determine when the [parties] sustained the alleged injury for which they seek redress." Merrill Lynch, 154 F.3d at 59.  The Court "then determine[s] when they discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point." Id.

"In this Circuit we recognize a 'separate accrual' rule under which a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." Bingham v. Zolt, 66 F.3d 553, 559 (2d Cir. 1995). The injury, however, "ha[s] to be new and independent to be actionable." Merrill Lynch, 154 F.3d at 59.  Further, "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier

predicate acts that took place outside the limitations period."
Klehr v. A.O. Smith Corp., 521 U.S. 179, 190 (1997).

The MTD Order dismissed Plaintiffs' claim for the recovery
of artwork and assets that Defendants allegedly pilfered from
C.C. Wang and S.K. Wang because "Plaintiffs were on notice that
Defendants had taken the Estate's artwork by 2007.  As this
action was not filed until 2018, any injury related to that loss
is time-barred." Wang, 2019 WL 1763230, at *5.  The Court also
rejected Plaintiffs' argument that the FAC's alleged predicate
acts—i.e., transportation of stolen artwork in violation of 18
U.S.C. § 2314, and sale of stolen artwork in violation of 18
U.S.C. § 2315—saved their untimely RICO claim, holding:

> these new predicate acts did not proximately cause the
> injury for which Plaintiffs are seeking relief.  Had
> Defendants, and more specifically Y.K. King, not taken
> the artwork in the first place, there would be no injury
> here because there would be nothing to transport and
> sell in China.  All these predicate acts did, therefore,
> was further an "injury that happened or could have
> happened independently" of them, which is insufficient
> to create a new and independent injury. Vicon Fiber
> Optics Corp. v. Scrivo, 201 F. Supp. 2d 216, 219
> (S.D.N.Y. 2002).

Wang, 2019 WL 1763230, at *6.

Plaintiffs argue that the SAC now alleges a timely "loss of
art and assets" injury, (SAC ¶ 93), because the SAC has added
allegations that the artwork Defendants sold in violation of the
Restraining Order were unique and irreplaceable.  Accordingly,
Plaintiffs argue, Defendants' improper sales constitute a new

and independent RICO injury because the Restraining Order served to protect the Estate's right to take physical possession of the priceless artwork, and the improper sales irreparably damaged that right since "monetary compensation will never fully ameliorate the injuries caused to the Estate." (Id. ¶ 50.)

The Court disagrees. Defendants' violation of the Restraining Order may give rise to a new claim in New York state court, but it does not establish a new, independent, and timely injury for purposes of Plaintiffs' federal law RICO claims.

First, the SAC does not allege a sufficiently "new" injury because any cause of action relating to a "right to physically repossess the stolen property," (Pls.' Mem. of Law in Supp. Mot. for Leave ("Pls.' Mem."), ECF No. 71, at 1; see also id. at 4, 6; Pls.' Reply Mem. of Law in Further Supp. Mot. for Leave ("Pls.' Reply"), ECF No. 75, at 1–3), accrued when Plaintiffs learned or should have learned that Defendants had improperly taken physical possession of the artwork. See Bingham, 66 F.3d at 560 (explaining that a "civil RICO cause of action accrue[s] when [the plaintiff] learn[s], or should have learned, . . . that it ha[s] incurred the actionable injuries"); Long Island Lighting Co. v. Imo Indus. Inc., 6 F.3d 876, 887 (2d Cir. 1993) (holding the plaintiff's RICO injury occurred at the time it knew or should have known of a design defect in the generators it had purchased, and the later failure of the generators did

not give rise to a new and independent RICO claim); Lorber v.
Winston, 962 F. Supp. 2d 419, 447–48 (E.D.N.Y. 2013) (explaining
that the complaint alleged "one singular scheme . . . which was
fraudulent at the outset" and the plaintiff's allegations of new
and independent injuries "simply followed from the execution of
that scheme").  Here, the SAC's new allegations regarding the
invaluable nature of the artwork do not cure Plaintiffs' RICO
claim because the injury they continue to allege is the same
injury they incurred on the day of the theft: loss of possession
and the attendant right to reclaim property that belonged to
them.  As the Plaintiffs themselves acknowledge, the Restraining
Order served to protect that attendant right, (Pls.' Mem. at 1,
4, 6; Pls.' Reply at 2); the probate court's order did not
create a new and independent right out of thin air.  "The fact
that [Defendants] later sold the [property] they allegedly
pilfered from Plaintiffs for certain sums of money goes merely
to the measurement of Plaintiffs' damages"—it does not give rise
to a new and timely RICO claim. Price v. Gast, No. 98-cv-7769
(LBS), 2000 WL 369381, at *5 (S.D.N.Y. Apr. 11, 2000) (citing
Mgmt Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co., 883
F.2d 48, 51 (7th Cir. 1989) (noting that a defendant's
"subsequent use of the allegedly stolen software cannot be
characterized as subsequent thefts . . . but would go only to
the issue of damages")).

Second, Defendants' improper sale of artwork subject to the Restraining Order is not a sufficiently "independent" injury because what Defendants did with the artwork after they stole it is entirely dependent on the initial theft. Indeed, the Restraining Order itself and Plaintiffs' purported injury are direct consequences of the initial theft and the fact that Defendants already had the artwork in their possession. See Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp., 624 F. App'x 23, 27 (2d Cir. 2015) (summary order) (affirming dismissal of RICO claims as time-barred where the alleged timely injuries—the foreclosure of a hotel and its subsequent sale at auction—were a direct consequence of the untimely RICO injury—the unionization of the hotel's workforce and the resulting higher labor costs).

Third, although Plaintiffs do have a remedy for violations of the Restraining Order—see N.Y. Judiciary Law § 753, which gives New York state courts the "power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced"—Defendants' alleged violation of the Restraining Order is not a valid RICO predicate on its own because § 1961(1)(A) requires an "act or threat involving murder, kidnapping, gambling, arson, robbery, bribery,

16

extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year."  Plaintiffs have not argued that civil contempt rises to the level of § 1961, but even if it did, N.Y. Judiciary Law § 774 limits any term of imprisonment under the circumstances of this case to no more than six months.

Finally, the SAC's new allegations of injury still do not establish proximate causation or cure the FAC's untimely claims regarding "the loss of art and assets" because, once again, Defendants were only able to tortuously transport and sell the property in violation of the Restraining Order because of the initial theft.  "Had Defendants . . . not taken the artwork in the first place," and had Plaintiffs not been injured by the attendant loss of physical possession, "there would be no injury here because there would be nothing to transport and sell in China," Wang, 2019 WL 1763230, at *6, or to serve as a basis for a violation of the Restraining Order.  Accordingly, leave to amend would be futile because any injury derived from the loss of Estate- or S.K. Wang-owned art or assets is time-barred. See id.

### b.  Rejection of the 2003 Will and Removal of A. Wang as Preliminary Executor

The FAC alleged that, as part of Defendants' efforts to

invalidate the 2003 Will in Surrogate's Court, Y.K. King (1)
made false representations to Dr. Goldstein, a medical expert
who testified about C.C. Wang's mental state at the time he
executed the 2003 Will, and (2) forged a document that purported
to show a settlement between A. Wang and Defendants by which
Defendants returned forty-six artworks to A. Wang in exchange
for an agreement, on the part of the Estate, to allow Defendants
to retain certain other paintings already in their possession.
Wang, 2019 WL 1763230, at *2.  The FAC alleged that these
fraudulent acts injured Plaintiffs by causing the probate court
to invalidate the 2003 Will, remove A. Wang as executor of the
Estate, and replace him with Y.K. King.  Id.

The MTD Order ruled that these allegations failed to plead
a RICO injury for two reasons:  First, Plaintiffs "failed to
allege how either Dr. Goldstein's false testimony or the
fraudulent settlement document proximately caused the
Surrogate's Court to invalidate the 2003 Will and remove A. Wang
as preliminary executor" because "[p]roximate cause requires
'some direct relation between the injury asserted and the
injurious conduct alleged,' and 'a link that is too remote,
purely contingent, or indirect is insufficient.'" Id. at *6
(quoting Empire Merchs., LLC v. Reliable Churchill LLLP, 902
F.3d 132, 141 (2d Cir. 2018)).  The Court found that because the
Surrogate's Court invalidated the 2003 Will on three grounds—

18

lack of capacity, fraud, and undue influence—Defendants' alleged manipulation of Dr. Goldstein's testimony was not a proximate cause of Plaintiffs' injury since the jury still would have invalidated the will for fraud and undue influence. See id. The Court next dismissed Plaintiffs' assertions regarding the settlement document as "merely conclusory" because the FAC did not offer any explanation "as to how the jury relied on this document in rendering its verdict." Id.

Second, the MTD Order also ruled that the FAC failed to plausibly allege causation because Plaintiffs alleged that the jury relied on the disputed evidence "'among other things' in reaching its verdict." Id. at *7. This, the Court ruled, "conceded that the fraudulently procured evidence was not the sole basis for—or even a 'but-for' cause of—the jury's verdict." Id. (citing Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'")).

Plaintiffs argue that the SAC cures these deficiencies by adding specific allegations regarding how Defendants used Dr. Goldstein's testimony and the settlement document during the Surrogate's Court trial. Accordingly, Plaintiffs argue, these new allegations now establish that, at a minimum, a factual

question exists regarding whether the fraudulent evidence caused the jury verdict and A. Wang's removal as executor of the Estate. (Pls.' Mem. at 2, 6–7; Pls.' Reply at 1, 4–5.) Defendants counter that the SAC still fails to establish causation because it does not allege how the jury relied on the evidence, and thus, Plaintiffs have failed to establish that the disputed evidence was a "but for" cause of Plaintiffs' injury. Defendants also re-raised their prior arguments that the SAC's allegations fail under the doctrines of equitable estoppel and Rooker-Feldman, among other grounds.[2]

The Court need not decide whether the SAC plausibly alleges proximate causation sufficient to withstand a motion to dismiss because the Court finds that it lacks jurisdiction over the claims that serve as the relevant predicate acts—the falsification of evidence during the trial in Surrogate's Court—and Plaintiffs' alleged injury—the invalidation of the 2003 Will and removal of A. Wang as preliminary executor—pursuant to the Rooker-Feldman doctrine.[3]

---

[2] Neither Plaintiffs' moving brief nor their reply brief addressed Defendants' renewed arguments regarding equitable estoppel and the Rooker-Feldman doctrine. Accordingly, the Court looked to the counterarguments to such defenses in Plaintiffs' opposition to Defendants' motion to dismiss the FAC. (See Pls.' Mem. of Law in Opp'n Mot. to Dismiss, ECF No. 52, at 21–22.)

[3] In a footnote at the end of their reply brief, Plaintiffs requested permission to cure any pleading issues not addressed in the MTD Order. Although the Court did not rely on Rooker-Feldman when dismissing the FAC, Plaintiffs have never offered an argument in opposition to Defendants' repeated invocations of the doctrine as grounds for

"Rooker–Feldman bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). "A motion to dismiss based on the Rooker–Feldman doctrine is analyzed pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure governing lack of subject matter jurisdiction." Sterling v. Deutsche Bank Nat'l Tr. Co. as Tr. for Femit Tr. 2006-FF6, No. 19-cv-205 (GBD)(KNF), 2019 WL 5722320, at *3 (S.D.N.Y. Aug. 16, 2019); see also Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) (per curiam) ("Under the Rooker–Feldman doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments.").

---

dismissal of Plaintiffs' claims. (See supra note 2; see also Defs.' Mem. of Law in Supp. Mot. to Dismiss, ECF No. 51, at 4; Defs.' Reply Mem. of Law in Further Supp. Mot. to Dismiss, ECF No. 55, at 8–9; Defs.' Mem. of Law in Opp'n Mot. for Leave, ECF No. 73, at 3, 9–10.) Accordingly, as discussed below, because the Rooker–Feldman doctrine unequivocally divests the Court of jurisdiction over Plaintiffs' claims related to the trial in Surrogate's Court, and the Court dismisses the claims with prejudice, Plaintiffs' request for leave to cure this issue is denied. Cf. Weslowski v. Zugibe, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015) ("[B]ecause the arguments appear only in footnotes, they are not properly raised, and the Court is under no obligation to consider them.").

"After Exxon Mobil, the Second Circuit reexamined Rooker-Feldman and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) 'the federal-court plaintiff must have lost in state court'; (2) 'the plaintiff must complain of injuries caused by a state-court judgment'; (3) 'the plaintiff must invite district court review and rejection of that judgment'; and (4) 'the state-court judgment must have been rendered before the district court proceedings commenced.'" Borrani v. Nationstar Mortg. LLC, No. 17-cv-9397 (KMK), 2019 WL 1429982, at *6 (S.D.N.Y. Mar. 29, 2019) (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)).

Here, there is no question that the first, second, and fourth requirements are met:  Plaintiffs lost in New York Surrogate's Court, and the injury of which they now complain—A. Wang's removal as executor of the Estate—was caused by that judgment.  Further, on June 7, 2018, Plaintiffs' appeal of the jury verdict (among other disputed issues) was unanimously denied by the First Department, Matter of Chi-Chuan Wang, 162 A.D.3d 447 (1st Dep't 2018), and on September 18, 2018, their motion for leave to appeal was denied by the Court of Appeals, Matter of Estate of Chi-Chuan Wang, 109 N.E.3d 1159 (N.Y. 2018). Plaintiffs commenced this action afterwards, on September 30,

2018.[4]

There also is no question that the third element is met and Plaintiffs impermissibly seek the Court's review and rejection of state court judgments. Here, Plaintiffs challenge Dr. Goldstein's testimony and the settlement document—but Plaintiffs' challenges to the admissibility of this evidence was flatly rejected by the First Department. See Matter of Chi-Chuan Wang, 162 A.D.3d at 448-49. And, apart from the loss of art and assets discussed above, the only other injury that the SAC specifically alleges "due to Defendants' pattern of racketeering activity" is the negative effect the probate court's judgment had on Plaintiffs, which, they contend, "wrongfully stripped [A. Wang] of his position as Preliminary Executor of the Estate." (SAC ¶ 93.) This judgment, however, also was unanimously affirmed by the First Department. See Matter of Chi-Chuan Wang, 162 A.D.3d at 448.

Plaintiffs' RICO claim premised on Defendants' use of Dr. Goldstein's testimony and the settlement document are further

---

[4] Further, on January 2, 2020, the First Department unanimously held that S.K. Wang's petition to probate a 2003 codicil was barred by the doctrine of equitable estoppel because the jury's finding that Plaintiffs had engaged in fraudulent conduct and exerted undue influence on C.C. Wang was dispositive of the codicil's validity. See In re Estate of Chi-Chuan Wang, 113 N.Y.S.3d 527, 527 (1st Dep't 2020). The First Department also rejected S.K. Wang's claim that he did not have a full and fair opportunity to litigate the issue of fraud and undue influence because he received ineffective assistance of counsel. Id. at 528.

barred by Rooker-Feldman given that their claims regarding such evidence and Plaintiffs' resultant injuries "are inextricably intertwined with the state court judgment and would require overturning the state court judgment." Borrani, 2019 WL 1429982, at *9; see also Vossbrinck, 773 F.3d at 427 (affirming dismissal pursuant to Rooker-Feldman where the plaintiff "is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who" obtained it fraudulently, and where the federal court would be required "to review the state proceedings and determine that the . . . judgment was issued in error. And the injury of which [the plaintiff] 'complains' in []his claim for relief, and which he seeks to have remedied, is the state . . . judgment. This is evident from the relief [the plaintiff] requests").

Finally, Plaintiffs' claims are appropriately dismissed even at this early procedural stage because this is not a case in which the Court can liberally construe the SAC's allegations to not be related to the state court proceeding—Plaintiffs expressly relate their claims to the Surrogate's Court judgment and the evidence it allowed the jury to consider. See Borrani, 2019 WL 1429982, at *9. Accordingly, the Court does not have jurisdiction over such claims or A. Wang's removal as the Estate's Preliminary Executor, and they must be dismissed.

### c. Legal Expenses in Connection with the King Action

Because Plaintiffs do not adequately allege RICO claims premised on the improper sale of restrained artwork or the proceedings in probate court, the SAC's remaining RICO claim premised on legal fees that Plaintiffs have incurred in the King Action must be dismissed for the same reasons set forth in the MTD Order. See Wang, 2019 WL 1763230, at *7; see also Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018).

### C. Conspiracy

The SAC reasserts Plaintiffs' 18 U.S.C. § 1962(d) claim for conspiracy to violate RICO, which once again is premised on the same predicate acts and injuries as Plaintiffs' substantive RICO claims discussed above. As before, because the SAC does not adequately allege an actionable RICO claim based on permissible predicate acts and injuries, the SAC's conspiracy claim must be dismissed for the same reasons set forth in the MTD Order. See Wang, 2019 WL 1763230, at *8; see also FindTheBest.com, Inc. v. Lumen View Tech. LLC, 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014).

### D. State Law Claims

Both the Second Circuit and the Supreme Court have held that "when the federal claims are dismissed the 'state claims should be dismissed as well.'" Merrill Lynch, 154 F.3d at 61 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726

(1966)). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). This is such a case. Accordingly, the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims, and they are dismissed without prejudice.

### III. Conclusion

For the reasons stated above, Plaintiffs' motion for leave to amend is DENIED.

It is FURTHER ORDERED that, because Plaintiffs have had the opportunity to draft the SAC and file the instant motion with the benefit of full document discovery and nearly complete fact discovery, Plaintiffs' RICO claims are dismissed with prejudice. Plaintiffs' state law claims are dismissed without prejudice.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 70 and close this case.

**SO ORDERED.**

Dated:　New York, New York
　　　　January 2 7, 2020

_John F. Keenan_
John F. Keenan
United States District Judge

26